Good morning, Your Honor. May it please the Court, my name is Andrea Catalano-Red Crow and I am representing Kathleen Mulligan. Summary judgment needs to be reversed in this case as the District Court erred in granting summary judgment on the Rehabilitation Act, Americans with Disabilities Act claims that the defendants had conceded in the motion for summary judgment to be timely brought and having disputed facts. Additionally, summary judgment should be reversed on the hostile work environment claims under both Title VII and the Rehabilitation Act because there are disputed facts which state a prima facie claim. Have we ever adopted an ADA hostile work environment cause of action in the 9th Circuit? No, sir, we have not. The 9th Circuit has not made that determination. It has been made by four other circuits, the 3rd, 4th, 6th and 8th, I believe. Do you want us to make new law? I would like the Court to recognize that a hostile work environment can be articulated under the Rehabilitation Act and the ADA as the EEOC in its compliance manual and guidance has recognized that such a cause of action would exist as have some sister circuits. Within the 9th Circuit, there have been District Courts that have presumed in arguendo that a hostile work environment based on the Rehabilitation Act would be a viable, cognizable claim and it has proceeded to then analyze the facts of those individual claims. It never came to the conclusion supporting that cause of action in those trial court decisions, but the District Courts did consider that there was a colorable basis for articulating retaliation under the ADA as a cognizable claim. Can I go back to, that's a more full argument that we need to have about these other issues, but let me go back to the statute of limitations issue. What's your best argument that the failure to accommodate and retaliation claims based on actions that occurred prior to, and I'm just checking my date here, October 23rd, 2012 are not time barred? It's broken down according to the cause of action. When we look at the hostile work environment claims, the Supreme Court has argued... And again, on my question, I'm limiting this to the failure to accommodate and retaliation claims. Are you including the hostile work environment in the retaliation claim aspect or what? Hostile work environment is one of two theories for articulating a retaliation claim. If you'd like me to confine it to the other theory, I can do so. Just for the moment, just for the moment. I'm happy to do so. With respect to the retaliation claims that exist, there is not an argument. The retaliation argument and the accommodation arguments sort of hold hands insofar that the plaintiff had sought reasonable accommodations because of her medical conditions beginning in 2003. And the agency had continually engaged her in the interactive process and granted piecemeal accommodations drip by drip over a very prolonged period of time. And when she would renew or check in again on the status of how her requests for accommodation were being managed, she would be told that they were still ongoing, that the scant paperwork that the disability program managers actually generated would indeed say things like this is an ongoing request, it dates back to 2003. And because the EEOC in its case law and in the compliance manual has construed that an accommodation does not trigger the statute of limitations until it is denied, there isn't any triggering event to prevent her from making the assertion that the failures of accommodation that are still extant and renewed, if you will, in October of 2012 are not having their origin in 2013. So am I understanding you correctly that with respect to the failure to accommodate, you kind of view this as a continuum as long as there's anything going on at any point and it in effect relates back and it's still timely? No. The EEOC precedents and interpretation of statute have held that where there is an ongoing need for an accommodation, there is an ongoing duty imposed upon an employer to make an accommodation. In the context of Judge Mulligan, she had needed an ergonomic desk since 2013. That need did not change or cease to exist at any point moving forward. In October of 2012, she has once again brought to the attention of her supervisor and by extension the EEOC the need for that desk to accommodate her now significantly worsened disabilities by presenting medical evidence and saying what about that desk? I still need that desk and I'm going to need some clerical assistance with typing and with filing because of the degeneration of her medical disabilities. Then there is no limitation. If it keeps going, it never accrues, so it just keeps going. The limitations period does trigger when there is a denial of an accommodation request. But if they do nothing. But they didn't entirely do nothing. They refused to, they don't do it. That's not a denial. It becomes a question of fact for a jury to make a determination of if there is a time point where it could be argued as a constructive denial, but the fact pattern presented here shows the agency continuing to engage in a dialogue and granting these accommodations on a piecemeal basis. So it leaves the plaintiff with a reasonable expectation that the claim is timely. And with respect to the two levels of accommodation that had not yet been addressed in 2012, even if we were to say, well, everything prior to October is backstory and is not actionable in and of itself. The fact that she renewed those requests in 2012 and then filed within 45 days still renders those accommodation claims timely. The district court made an error when it said that the ergonomic assessment report, the second ergonomic assessment report that was conducted in December of 2012 was an accommodation when in fact that doesn't do anything to accommodate a person. It merely identifies the tools or equipment that would affect an accommodation. That was part of why the accommodation claims should not have been granted at summary judgment because a jury might find that the 13-month delay in the provision of the ergonomic desk, which was not provided until November of 2013, was an unreasonable delay and that the EEOC should also have liability for failing to grant interim measures of temporary accommodation perhaps by borrowing one of the identical ergonomic desks from the legal unit across the hallway. Let me ask you this. My colleague asked you and I asked you basically what do we do with the statute of limitations issue? It still seems to me what you're saying is there really isn't one in these two areas. I don't believe there is a statute of limitations problem in these two areas. With respect to the articulation of the retaliation claim, the acts of retaliation that form the centerpiece of the case actually occur in October of 2012 and so they are timely. The hostile work environment is the claim that brings back. This is a little bit of an unusual question, but to me it's a factor. I don't remember ever being involved in a case like this where we have a judge, an actual judge of this very area who presumably has expertise in all these things. Does that, should that play any role in our evaluation of what we've got here? Yes, your honor, it should. Judge Mulligan in her analysis of her claims is falling back upon and relying on the case law of the administrative decisions of the Equal Employment Opportunity Commission with respect to the timeliness of the claims when the statute of limitations is triggered for those claims. Retaliation per se as a cause of action and the motivating factor evidentiary standard for a retaliatory hostile work environment claim. All of those are areas of law where the EEOC has some differences from the Ninth Circuit that it has identified as appropriate for federal sector claims and it has advanced. With respect to the retaliation per se claim in particular, there is a long body of case law that's over 26 years in length with respect to that claim. And we have not adopted that approach, right? Absolutely, your honor, you have not. The most recent case where it was advanced to a court in the Ninth Circuit that I was able to locate was the Go Daddy case out of the District of Arizona. And in that instance, retaliation per se as a theory was rejected by the district court at summary judgment. Retaliation continued as a claim to trial and the plaintiff was successful in that case so there was no appeal made of the retaliation per se claim because there was no need. The plaintiff had achieved the same remedies that would be available under per se, under retaliation by itself so it would be moot to bring that appeal. It is a claim that the EEOC has attempted to bring in other districts across the country without true success. The most recent compliance manual that issued from the EEOC in August of 2016 on the issue of retaliation has moved away from using the language of per se and simply calls it all retaliation. But the focus on the retaliation per se when we look at it in the administrative decisions of the EEOC which they ruled against themselves on in 2017 just a month after the district court rejected this claim here at the request of the EEOC. But the EEOC in the OFO decision of Charlie Kay versus Yang found retaliation per se when the managers were discussing the plaintiff's EEO complaint amongst themselves and we provided in the opening brief a table of all of the relevant opinions of the EEOC which have found per se what the EEOC has focused on in making per se retaliation a distinct claim has been the fact that there is an affirmative duty on the part of a manager and a supervisor to uphold and vigorously enforce civil rights Title VII ADA law. And when the supervisor derogates from that responsibility and does not uphold that duty, it is a per se violation and for which liability is appropriate. If I may, I'd like to reserve time. Doesn't that beg the question? Doesn't that assume that there's a violation that the supervisor is not responding to? The violation is the conduct of the supervisor itself. In the context of Judge Mulligan's case, Supervisory Judge Siegel pulls aside another administrative judge, Leslie Troop, and says to her that the plaintiff is ungrateful. She uses sexual epithet. She calls her selfish, a liar, untrustworthy in reference to the fact that she sought a reasonable accommodation. And then she says she's also all of these epithets because of an EEO complaint of sex discrimination that occurred in 2002. I thought some of these accommodations were because she refused to participate in some kind of a conference or something. That's a little different, isn't it? I'm sorry, the accommodations were because she's a... made in connection, if I understood it correctly, with Judge Mulligan's refusal to participate in a conference that the supervisor was hoping she would participate in. Judge Siegel had wanted Judge Mulligan to speak at an EEOC event. However, Judge Mulligan had experienced a medical emergency that had resulted in a visit to the emergency room that was contemporaneous in time to that request and had declined to make an appearance because of a medical illness. If, well... You can save it, sure. Absolutely. I'll save it. Thank you, Your Honor. Good morning. Good morning, Your Honors. May it please the Court. Excuse me. I'm Assistant United States Attorney David Pincus, and I represent the defendant Pelley, the chairperson of the Equal Employment Opportunity Commission. My first point is that Ms. Mulligan slept on her rights for nine years. And as the Court mentioned, she is... Her official title is attorney examiner, but she does handle administrative EEO cases. So she knew as well as anyone that at some point there's a constructive denial of a request for accommodation, and she even admits that in her EEO affidavit. She said specifically her complaints were denied through inaction. But in those nine years, what happened? Memories faded. Witnesses disappeared. All these four disability program managers retired. At least one of them died. This is all found in the record in the briefing of the party's discovery motion, which is, I believe, docket number 32. The Supreme Court held in Morgan that discreet acts must be exhausted on a timely basis. And this Court in Chorosky held, applied Morgan to the disability accommodation claims. Now with respect to this concept of a recurring violation, we cited the EEOC's Darby case, which held that in a recurring violation, only the portion of the recurring violation that was timely with respect to the date that EEO counseling was sought is actionable. That's the EEOC's decision. There may be other contrary EEO decisions where the period was much shorter, but it is not true that the EEOC itself is taking a new position on this case. I will ask you a question here. The government indicated in connection with its motion for summary judgment in October 2012, in connection with the ergonomic accommodation and the 2013 request for clerical support claims, that it was not seeking summary judgment. And yet the district judge, Sue Esponte, granted summary judgment. We looked in those cases to determine whether, in this case Judge Mulligan, had a, in quotes, full and fair opportunity to ventilate the issues involved in the motion. What do we do with that? Is that something that was appropriate by the district judge? Or do we need to send that back to give Judge Mulligan an opportunity to either relitigate the issue, or have it go on to a trial? No, Your Honor, I don't think it is. I think it was appropriate here because I raised each of these issues and briefed them in my original summary judgment motion. So not only, and not only did the plaintiff appellee, Ms. Mulligan, appellant, excuse me, have the opportunity to raise these issues and to discuss them, but she did, in fact, respond to these issues. She said in her opposition to summary judgment, she responded to the argument that there was negligence, that the conduct that she's complaining about in these two cases was, there's no evidence that it was based on anything but negligence. She actually responded to that. And she also responded to my argument as to why the respects for these, the requests for these unusual clerical requests were not feasible. And, in fact, during this time period, in 2013, she got clerical support. She got the desk. So I think this is an issue. Why did you say that you weren't asking the Court to rule on it? Why did I say that? I'm sorry, Your Honor. I can't answer that without getting into attorney-client communications and work product. Okay. Because, you know, she is, so since she got these accommodations granted, that means that she can't, she's not seeking an injunctive relief. What she's seeking is compensatory damages. And the statute in question for contempt, the, I guess it's the amendments to the ADA, which also apply to the Rehab Act, say that you, when you're talking about, you know, failure to accommodate, there has to, if you want compensatory damages, you have to show some kind of discriminatory or retaliatory intent. Now, Ms. Mulligan is claiming that her supervisor had this retaliatory intent. But the point that is key here is that the supervisor had nothing to do with granting accommodations. Ms. Siegel was already gone by 2013. She wasn't even there. The request for the clerical support was made to her new supervisor, Diane Gross, and there's never been any indication that she had any retaliatory intent. Plus, Ms. Donna Walton was the disability program manager. She was the one responsible for getting a desk. Ms. Siegel had nothing to do with that. Now, they deposed Ms. Walton. If they had some evidence that she had a retaliatory intent, they certainly could have put it on. But they didn't do that. Let me ask you, because you're representing the EEOC. Yes. Which puts you in, as your previous, your answer to my previous question suggests, puts you in kind of a funny situation here. With respect to a per se violation, what is the, does the EEOC have a position on this? Yes, they do. And they have authorized me to make this position. This is not just me saying it and not just my office saying it. They are not, they do not, they've moved, as counsel said, they've moved away from the concept of retaliation per se. Now, why is that? Because of the Supreme Court. When you say they, the EEOC. The EEOC has moved away, and they didn't put it in their most recent guidance, which is their official word. The reason for that is the Burlington case. The Supreme Court said context matters when you're dealing with retaliation. This is antithetical to that concept. In Burlington, the, there was a woman, and she was reassigned to a much worse position, and she was not given some, she was on suspension with no pay for a month, but then later she got paid back. And the court said, well, it depends on the context. For some people, getting another position wouldn't have been a big deal. In this case, it was. In some cases, it wouldn't matter if you got, if you didn't get paid for a little bit, and then they paid you back later after the, it was a decision. But in this case, it did matter because this woman was living paycheck to paycheck, and she didn't have enough food for her children. So concept, context matters. Now, here, the context is interesting. Ms. Mulligan's attorney just talked about this prior EEO case in 2002. And that's the reason why she didn't, she slept on her rights for nine years, because she was so dissatisfied. And that decision was rendered at a time. It's available on Westlaw. I cited in a brief. I cited to the district court. Which decision again? It's called Mulligan v. Dominguez. This is the decision that Ms. Mulligan had filed an EEO complaint because she got a letter of warning from her supervisor. And she said it was discriminatory. The letter of warning was that she had struck a subordinate. And that she said that the subordinate hit her first. But the EEOC looked at this and said, you know, all the witnesses that were there said you were the aggressor. Ms. Mulligan was the aggressor. So when Christine Siegel talked about her prior EEO case, and she said she called her a liar, no supervisor should ever badmouth their employee to another person. And no supervisor should ever be talking about their prior EEOs. But people do that in the real world. And here it's impossible to read that decision without concluding that Ms. Mulligan struck a subordinate. And, you know, in any place other than the government, that person would have been fired on the spot. Well, okay. Going back to the per se. Yes. If I understand the concept of per se, it is that you don't have to prove intent if this is said or done. We haven't recognized it, I guess. Right. But is that basically what it is? I think what happens in the EEOC is they say, well, you talked about your client's EEO. Therefore, it's over. There's liability. We're going to have this notice, you know, displayed on the floor so everybody knows. And they're going to order some training. That's the kind of case where this arises in. But this is not the sort of thing that we do in the district court. So, in other words, you're saying we don't want you to do this per se concept because that would be a blanket determination, and these things ought to be determined on an individual basis where the context is taken into account, like Berlin did. It has to be, yes. So you have to show intent.  And also, you know, what does the EEO do? I don't think any circuit has recognized per se retaliation. I think what the court in Burlington said was that retaliation itself isn't actionable. There has to be some harm, and it has to be material harm. I think what the plaintiff is trying to do in this case is to say that because she talked about my EEO case to another person, I don't have to show anything other than that. And that is not just evidence of retaliation and retaliatory motive, but actually that's the adverse action itself. And I don't think that that is consistent with this Court's precedence. In Hartage or Quartan where the supervisor laughed about the employees making a claim for sexual harassment and she heard it, I just think that is inconsistent with this Court's precedence. And if the EEOC does that, well, I think that we have to go with this Court's precedence, the law of the circuit. My opponent talked about the motivating factor issue. I don't really think it needs to be decided today or at this stage of the litigation. I don't think it would make a difference either way. And I do want to point out that this Court has applied the Nassau standard to federal employees in a case called Campbell v. Hagel, Department of Defense. Let me see. I also wanted to mention that the Porter case talked about discreet acts and she doesn't really have any timely adverse action for retaliation in this case. I don't think that just badmouthing an employee can possibly satisfy that standard based on this Court's precedence. Okay, the hostile work environment. Hostile work environment. Yes, Your Honor. What do you want to tell us about that? I want to tell you about the Porter case. I believe you were on that panel, so I probably don't need to tell you, but the Court talked about not blurring the distinction between discreet acts and nondiscreet acts. And I think that that is what the plaintiff is trying to do here, is trying to mix it all up and throw everything in. But I think that is not consistent with what this Court has said. And Morgan, I think also Morgan said that an untimely act has to be sufficiently related or the timely acts to constitute one unlawful employment action. We have a few, and Morgan specifically said discreet acts are not actionable if time-barred. We have a few episodic cases where the supervisor got frustrated with Ms. Mulligan and started and did berate her. But we're talking about one time in 2004 where she supposedly said something about, those are great slides if you're a paid defense lawyer. It wasn't even clear she was talking about the plaintiff. She might have been talking about the people who are the defense attorneys who are attending this conflict. Then I think four years later she said something about, I'm so sick of you because she came to her office, she wanted to talk to her about something, and Ms. Mulligan said, just wait a minute, I'm in the middle of something. And that's when she supposedly said that. And then the unfortunate situation in October 2012 when she was berated, bad-mouthing her employee. And I just want to say again, it's not a good idea, obviously, for a supervisor to bad-mouth one of their employees to one of their coworkers. No one would like it. I understand that. But I don't think it creates a hostile work environment. I don't think it was severe and pervasive. It certainly wasn't pervasive. And as far as severity, I do want to point out that Ms. Siegel, after she learned that Ms. Mulligan had filed an EEO complaint in January 2013, she stepped down as a supervisor. Ms. Mulligan always keeps saying that she was going to do that anyway, but actually the testimony was that this was, their timetable was accelerated by this. And she doesn't complain that anything happened, that Ms. Siegel did anything to her after October 2012. So let me just ask you a question. I don't know the answer to this question, but many of the hostile work environment cases we deal are issues where male supervisors say such things to females, and sometimes the other way around. Here you have a female supervisor saying it about a female. Should that play any role whatsoever in our analysis of this case? Well, I don't think this Court has ever said that calling someone the B word, if I may call it that, that in itself is actionable. Well, I'm not saying that it is. I just want to know whether the same gender involvement here puts it differently. Maybe it's the context issue. It is. Again, context matters. I think Leslie Troop, who was the one who heard the comments, she said that everyone in the unit has a potty mouth. Everyone uses that word, including Ms. Mulligan. And it could be considered shop talk in that environment. Apparently that's true in a lot of settings these days. Yeah, I'm not excusing what Christine Siegel said. Nobody is. I'm just saying it doesn't rise to the level of a hostile work environment. And I don't think it's an adverse action itself. It might suggest some motives, but it's not in itself actionable. Or at least not with respect to the issues here. It might show hostility. Yes. But that's not the point. And I don't think it can be imputed to any of these other people, any of these low-level employees, such as the gentleman who is doing the paperwork for this reclassification or even Donna Walton, the disability program manager. I don't even think there's any evidence that she even knew she had an EEO case. All right. Thank you very much. Thank you, counsel. We appreciate it. So, counsel, you have a little time left. Not too much, but you've got some. I will try not to talk too quickly, Your Honor. With respect to this proposition that you must show an intent to retaliate, that is not the standard that is employed by the Ninth Circuit. Hold on one second. Do we have the time? I'm sorry. Go ahead. Thank you. Ray V. Henderson does not hold that you have to have a specific intent to retaliate. It is looking at whether there is knowledge of a prior protected activity, which Ms. Siegel admits to contemporaneous to making her sexual epithet and other extreme insults of a judge. And it has to be conduct that is intended to deter an EEO activity or have a chilling effect. That is what an adverse action is defined to be, whether we call it per se or simply retaliation. And in the context here, we have Judge Siegel, the supervisor of the hearings unit, quizzing a junior judge about her co-worker, asking her if she's going to be a witness, asking her if she knows whether Mulligan intends to file a claim, asking Troup whether she herself intends to file her own type of claim in the future, and stating, I don't have to give an accommodation, I don't have to participate in facilitating an accommodation for this woman who is an ungrateful expletive and undeserving because of her prior EEO activity. She puts it all together in a nice, neat little package. She doesn't have this conversation once. It's not a one-off of ill temper. She has this conversation with Leslie Troup twice. Right. I think we have that point. Other questions by my colleagues? I think your time is up, so thank you, counsel. We appreciate it very much. Thank you very much, Your Honor. Thanks to all. The case just argued is submitted, and the Court stands in recess for the day.
judges: Schroeder, M. Smith, Drain